IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jennine C.M.,[1]<br><br>Plaintiff,<br><br>v.<br><br>Martin O'Malley,<br><br><br><br>Defendant. | C/A No. 9:22-3066-SAL<br><br><br><br>**ORDER** |

This matter is before the court for review of the December 21, 2023 Report and Recommendation of United States Magistrate Judge Molly H. Cherry (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.). [ECF No. 22.] In the Report, the magistrate judge recommends the Commissioner's final decision denying Plaintiff's claim for Social Security disability benefits be affirmed. *Id.* Plaintiff filed timely objections to the Report. [ECF No. 26.] Defendant replied. [ECF No. 27.] For the reasons outlined herein, the court adopts the Report and affirms the Commissioner's decision.

**STANDARD OF REVIEW**

The scope of federal court review under 42 U.S.C. § 405(g) is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "Under the substantial-evidence standard, a court looks to an existing administrative record and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended due to significant privacy concerns in social security cases

asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence" is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to the court. The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1). In the absence of specific objections to portions of the Report, this court is not required to explain its reasons for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). It must "only satisfy itself that there is no clear error on the face of the

---

that federal courts refer to claimants only by their first name and last initials in court opinions.

record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

## DISCUSSION

Plaintiff objects to the magistrate judge's finding that remand is not warranted in this case. As explained in the Report, Plaintiff raised three sets of issues regarding the Administrative Law Judge's ("ALJ") decision denying relief—(1) that the ALJ erred in finding some of her impairments non-severe; (2) that the ALJ failed to property evaluate her impairments when formulating the residual functional capacity ("RFC"); and (3) that the ALJ did not properly evaluate her subjective symptoms. *See* ECF No. 22 at 6. As to each of these arguments, the magistrate judge found no basis for remand. The court reviews the ALJ's decision, the magistrate judge's Report, and Plaintiff's objections below.

**I.     The ALJ's Decision**

Plaintiff protectively filed for DIB on September 26, 2019, alleging disability caused by Multiple Sclerosis ("MS"), diabetes, and a spinal condition. She provided a disability onset date of March 18, 2019, which was later amended to April 29, 2020. Plaintiff's claims were denied at the initial and reconsideration stages of administrative review. Following a telephone hearing where Plaintiff and a vocational expert testified, the ALJ issued an unfavorable decision denying Plaintiff's claims.

The court briefly summarizes the most relevant parts of the ALJ's decision. The ALJ found Plaintiff had the following severe impairments: MS, spinal disorder, and obesity. Tr. 13. The ALJ found Plaintiff's diabetes and optic neuritis were both non-severe impairments. Tr. 14. The ALJ offered the following reasoning for finding those impairments non-severe:

> As for the claimant's diabetes, she has no specific comp, however her A[1]c was 11.3 on March 5, 2020 (Exhibit 4F). She did have some problems with her blood

3

sugars while she was on steroid treatment for her eye (Exhibit 2F, page 27). On May 11, 2011, the claimant had no diabetes complications. She denied blurry vision, foot numbness, foot ulcers, hypoglycemia, or my[al]gias an[d] joint pains. (Exhibit 7F). Her A[1]c that day was 8.8 (Exhibit 7F).

As for the claimant's optic neuritis, on May 22, 2019, she was noted to have very mild atrophy in the right eye due to optic neuritis. She had made a nice [recovery] following steroids (Exhibit 2F). Her visual field constriction of the right eye was near normal. She did have myopia in both eyes and eyeglass prescriptions were provided. On May 1, 2020, the claimant noted in her Function report that she did not drive anymore with her blurred vision (Exhibit 8E). She has not complained of any vision issues to her neurologist (Exhibit 8F).

Tr. 14.

In the RFC analysis, the ALJ summarized Plaintiff's records related to her MS and her spinal disorder. As to Plaintiff's MS, the ALJ detailed the objective findings in those records, recited Plaintiff's subjective reports, and noted the treatment that had been recommended by her providers. Ultimately, the ALJ concluded, "The claimant sees neurology only occasionally and had not always been complaint with treatment recommendations." Tr. 16. As to her spinal disorder, the ALJ described imaging results over the years. In June 2019, an MRI showed C6-C7 severe stenosis and derate at C7-T1, but "[u]pon examination, the claimant was essentially asymptomatic, and surgery was not recommended." *Id.* Later imaging also showed issues, and Plaintiff complained of pain in her hands and shoulders that would come and go with no treatment. The ALJ concluded, "I made the claimant's spinal issues severe out of prudence due to the severity of diagnostics; however, she has very little symptomology." *Id.*

The ALJ considered Plaintiff's complaints of fatigue, pain, and medication side effects. He found the medical signs and laboratory findings substantiated her physical impairments but did not support that those impairments were capable of producing her alleged pain. The ALJ also expressly stated that he had considered Plaintiff's non-severe impairments of diabetes and optic neuritis in formulating her RFC.

The only medical opinions the ALJ had to consider were those of the stage agency consultants, and the ALJ found the physical assessments in those opinions were "not persuasive as evidence available at the hearing level demonstrates the need for greater functional limitations to the combined effect of the claimant's impairments, including obesity." Tr. 17.

Based on all of this, the ALJ found Plaintiff had the following RFC:

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders, ropes and scaffolds. She can occasionally climb ramps and stairs, kneel, crouch, and crawl. She can occasionally stoop to lift within the exertional level from the floor to the waist. She can frequently stoop to lift within the exertional level from waist height and above. She can frequently balance. Bilateral reaching, handling and fingering can be performed frequently within the exertional level. She can occasionally be exposed to extreme heat, vibrations, loud noise, and hazards associated with unprotected dangerous machinery or unprotected heights.

Tr. 15. Based on that RFC, the ALJ concluded Plaintiff could not perform her past relevant work but could perform other jobs. Tr. 18–19. Thus, she was not under a disability from April 29, 2020, through the date of the ALJ's decision.

## II.     The Report

In her Report, the magistrate judge recommended that the Commissioner's decision be affirmed because Plaintiff failed to show a basis for remand with respect to her three areas of argument. The court agrees with the magistrate judge's reasoning and adopts the Report's discussion of facts and law without a full recitation, but a detailed summary of the Report is helpful for understanding the court's resolution of Plaintiff' objections.

### A.     Non-Severe Impairments at Step Two

The magistrate judge first addressed Plaintiff's argument that the ALJ erred in finding her diabetes and optic neuritis as non-severe impairments at Step Two of the evaluation process. The magistrate judge found no error in the ALJ's Step Two reasoning because the ALJ

adequately explained his reasoning, and the court "is not left to guess at why the ALJ determined these impairments were non-severe." [ECF No. 22 at 8 (citing *Mascio v. Colvin*, 780 F.3d 632, 636–37 (4th Cir. 2015) (noting remand may be appropriate when courts are left to guess at how the ALJ arrived at their conclusions and meaningful review is frustrated)).] The court agrees with the magistrate judge. The ALJ sufficiently explained why he found Plaintiff's diabetes and optic neuritis to be non-severe impairments.

In addition, as noted in the Report, even if the ALJ committed some error in finding those impairments non-severe, the error was harmless since the ALJ considered both of those impairments in the RFC analysis. *See Collier v. Colvin*, No. 9:13-cv-3323-DCN, 2015 WL 1519796, at *7 n.3 (D.S.C. Mar. 30, 2015) ("To the extent [plaintiff] argues that the ALJ erred in finding her [impairment] non-severe at step two, such an error is harmless because the ALJ considered the [impairment] in subsequent steps.").

Finally, to the extent Plaintiff identified evidence that would have supported a finding that her diabetes and optic neuritis were severe, the magistrate judge noted that "this Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. [ECF No. 22 at 9 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("We must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence . . . [t]he duty to resolve conflicts in the evidences rests with the ALJ, not with a reviewing court."))]. The court agrees with the magistrate judge's conclusion that Plaintiff has not identified any basis for remand with respect to her arguments about the ALJ's determination of her non-severe impairments.

B.    **RFC Determination**

Turning to the RFC discussion, Plaintiff identified two areas where she argued the ALJ's assessment was inadequate—(1) with respect to her vision impairments, and (2) with respect to her cervical spine disease and MS.

1.    **Vision Impairments**

In her brief, Plaintiff argued the ALJ failed to adequately explain why the RFC lacked restrictions related to her optic neuritis.  *See* ECF No. 18 at 16–19.  However, as explained in the Report, the ALJ discussed Plaintiff's optic neuritis at Step Two of the evaluation, and, at that point, he noted some of her vision complaints but nevertheless found that impairment to be non-severe since Plaintiff was treated for her vision issues.  *See* Tr. 14.  The magistrate judge was unpersuaded by Plaintiff's argument that additional explanation was necessary since "[i]f an impairment is non-severe, it, by definition, does not significantly limit a claimant's ability to do basic work activities[, and, thus], the need for a more thorough explanation as to why the ALJ omitted corresponding restrictions related to Plaintiff's non-severe impairment is significantly diminished." [ECF No. 22 at 13.]  The magistrate judge stated she was "able to cross the logical bridge from the evidence to the ALJ's ultimate consideration." *Id.*  And the court agrees.

Again, the magistrate judge correctly noted it was the job of the ALJ, not the court, to weigh the evidence and resolve any evidentiary conflicts.

2.    **MS and Spine Disorder**

Plaintiff argued the ALJ failed to properly evaluate her MS and spine disorder, and she identified evidence that supported her allegations that more limitations were required in her RFC. *See* ECF No. 18 at 19–23.  But the magistrate judge recounted the evidence discussed by the ALJ in his decision and found "the ALJ reviewed the relevant evidence in detail, including evidence

7

Plaintiff appears to assert was ignored." [ECF No. 22 at 17.] Further, in light of the evidence, the ALJ imposed greater restrictions than those offered by the state agency consultants at the initial and reconsideration stages of administrative review. *Id.* In her brief, Plaintiff highlighted her hearing testimony that she had issues with balancing, doing chores, lifting things, and washing her hair, but, as pointed out in the Report, the ALJ's decision addressed those issues, for instance, by imposing limitations in the RFC for frequent balancing and exposure to hazards or by considering physical examinations that showed full strength in the upper and lower extremities. *See id.* at 17–18. As explained in the Report, "Plaintiff asks the Court to give greater significance to the evidence she highlights, accept her characterization of the evidence over the ALJ's and read the evidence differently. That is not the role of the court." *Id.* at 18 (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." (citation omitted))).

Additionally, the magistrate judge addressed Plaintiff's position that the ALJ had not discussed every piece of evidence, noting "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.'" [ECF No. 22 at 18 (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citation omitted)).] The magistrate judge found remand was not warranted. The court agrees with and adopts the magistrate judge's reasoning.

    C.    **Subjective Complaints**

The magistrate judge considered two claims of error Plaintiff made about the ALJ's consideration of her subjective complaints. First, Plaintiff argued the ALJ erred in stating she did not report vision problems to her neurologist when she did report visual disturbances during

an August 10, 2021 appointment. *See* ECF No. 18 at 24 (citing Tr. 557). Second, Plaintiff argued the ALJ failed to acknowledge the impact her migraine/headaches had on her RFC. *Id.* at 24–25.

As to the ALJ's error in stating Plaintiff never complained of vision problems to her neurologist, the magistrate judge cited the neurologist appointments where Plaintiff reported no eye or vision-related issues. [ECF No. 22 at 19 (citing Tr. 575, 583, 590).] And the magistrate judge found "[p]erhaps more notably, the very next day after reporting visual disturbances to her neurologist, she treated with Dr. Burrell [at Medical Group of the Carolinas] on August 11, 2021; Dr. Burrell's treatment note states Plaintiff '[d]enies Blurry vision.'" *Id.* at 19–20 (quoting Tr. 538). There were other doctors' appointments in April, May, and June of 2021 where Plaintiff did not report vision-related issues. *See id.* at 20. And Plaintiff's application for benefits did not list optic neuritis or any vision-related issue as a disabling medical condition. *See id.* The magistrate judge concluded, "In sum, a single report of visual disturbances does not invalidate all the other evidence in the record that fails to substantiate Plaintiff's alleged symptoms." *Id.* The court agrees.

Plaintiff argued that the ALJ failed to evaluate the effect of her headaches on her RFC. [ECF No. 18 at 24–25.] But the magistrate judge found that was incorrect since the ALJ expressly reviewed and considered Plaintiff's complaints of headaches made to her neurologist and the medications that had been prescribed for her headaches. [ECF No. 22 at 20.] The magistrate judge concluded the ALJ conducted a proper analysis of Plaintiff's subjective complaints. The magistrate judge further stated that even if the ALJ did not articulate his consideration of certain evidence to Plaintiff's liking, that was not a basis for remand. *Id.*

9

The court agrees with the Report's reasoning as to Plaintiff's Step Two, RFC, and subjective complaints arguments and adopts that discussion.

## III.  Plaintiff's Objections

Plaintiff's objections comprise about ten pages of argument that largely retread the same issues she raised in her brief.  *See* ECF No. 26.  Her objections are not clearly enumerated, and they are all made under a single heading—"The Plaintiff had significant symptom's resulting MS and significant spinal impairments and was not 'essentially asymptomatic.'"  *Id.* at 1.  The court addresses below those specific objections which can be gleaned from Plaintiff's arguments.

As an initial matter, Plaintiff seems to argue that the ALJ found her to be "essentially asymptomatic" with regard to all of her impairments.  *See id.* at 1–2.  If that is the thrust of Plaintiff's argument, the court must disagree.  Indeed, the decision is clear that the ALJ's consideration of Plaintiff's complaints and the objective medical evidence led him to conclude that Plaintiff was more limited than the state agency consultants had opined.  As a result, he imposed greater restrictions in her RFC than provided in the assessments at the initial and reconsideration stages of agency review.  The only time the ALJ noted Plaintiff was "essentially asymptomatic" was in his summary of her examination for spinal issues in June 2019.  Tr. 16.  Elsewhere, he noted she had "very little symptomology" from her spinal issues despite the imaging results.  *Id.*  To the extent Plaintiff is objecting to the ALJ's finding that she was "essentially asymptomatic," the court finds she has misconstrued the record, and her objection is overruled.

Plaintiff next summarizes some of the objective records regarding her MS and cervical spine issues.  *See* ECF No. 26 at 3–5.  She then argues, "[A]ny reasonable, fair evaluation of the objective medical evidence including the testing cited above would support a finding that [her]

10

allegations are well supported by this evidence." *Id.* at 5. According to Plaintiff, "[t]he ALJ decision summarized some of the MRI findings cited but really failed to explain why this objective evidence was not found to be persuasive in supporting [her] allegations." *Id.* She then argues the Report "cite[d] the ALJ's reliance on 'normal' findings and full strength in extremities at some of her medical examinations and determined that this evidence supported the ALJ's findings and supported the dismissal of [Plaintiff's] allegations." *Id.* at 6 (citing ECF No. 22 at 16–17). Plaintiff argues there are two problems with the Report's analysis. First, both relapsing MS and cervical radiculopathy are conditions that wax and wane. Thus, Plaintiff argues that "particularly in the context of the extensive documentation of her conditions via multiple MRIs, reliance on selected benign findings at selected times is a dubious basis to reject the allegations and objective evidence." *Id.* at 6. Second, Plaintiff asserts that the ALJ "did not fully acknowledge the evidence supporting [her] allegations and explain why this evidence did not weigh as heavily in the analysis." *Id.*

The court disagrees with Plaintiff's characterization of the ALJ's consideration of the evidence in her case. The ALJ's recitation of Plaintiff's medical history demonstrates that he included both negative and positive findings from her records, and then he explained how he resolved these findings and formulated the RFC. He did not simply rely on selected benign findings. *See* Tr. 14, 16–17.

As to Plaintiff's argument regarding the waxing and waning of her conditions, that was not argued to the magistrate judge. However, since that argument seems to be part and parcel of her earlier arguments, the court will consider it. *See German v. Saul*, Civil Action No. 5:19-cv-1975-CMC, 2020 WL 6268668, at *3 (D.S.C. Oct. 26, 2020) ("[A]ll arguments supporting any issue presented to the Magistrate Judge must be reviewed de novo, but new issues not previously

11

presented are waived."). Plaintiff does not identify any case law that the mere diagnoses of relapsing MS and cervical radiculopathy require a finding of disability based on the waxing and waning nature of those impairments alone. Nor has she identified any case law or regulations indicating that the waxing and waning nature of these conditions must specifically be considered by the ALJ. *Cf. Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 101–02 (4th Cir. 2020) ("SSR 12-2p recognizes that 'symptoms of [fibromyalgia] can wax and wane so that a person may have "bad days and good days."' Accordingly, the Ruling requires ALJs to 'consider a longitudinal record whenever possible' when evaluating a disability claim based on fibromyalgia." (internal citations omitted)).

Further, as detailed in the Report, the ALJ summarized and considered much of the evidence Plaintiff recites to the court with her objection. Additionally, the ALJ's decision acknowledged Plaintiff's reported symptoms and balanced those with the examination and other objective findings, both positive and negative. *See* Tr. 16. With respect to Plaintiff's spinal issues, the ALJ described the pain in her shoulders and hands as symptoms that would "come and go" but noted she had no treatment and resolved that, overall, she had "very little symptomology." *Id.* Plaintiff speculates that, based on her diagnosis of relapsing MS worse with activity, "it is reasonable to anticipate her symptoms would be significantly worse on any actual attempt to perform full time work." [ECF No. 26 at 4.] But she does not identify what evidence demonstrates a waxing and waning of her impairments. Notably, while medical records reflect Plaintiff was diagnosed with relapsing MS as early as May 2019, the state agency consultants outlined less restrictive functional limitations than the ALJ adopted. Based on his evaluation of the evidence, including Plaintiff's complaints of fatigue, pain, and other issues, the ALJ found the "evidence available at the hearing level demonstrate[d] the need for greater

functional limitations to the combined effect of the claimant's impairments, including obesity." Tr. 17. Plaintiff claims the ALJ should have considered the waxing and waning of her conditions, but the ALJ's decision demonstrates that he found Plaintiff's impairments had progressed since her diagnosis.

In effect, Plaintiff is asking the court to reweigh the evidence considered by the ALJ. For the reasons outlined above and those detailed in the Report, the court declines to do so. *See Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012) ("We are not at liberty to 'reweigh conflicting evidence . . . or substitute our judgment for that of the [ALJ].'" (quoting *Johnson*, 434 F.3d at 653)). Plaintiff's objection is, thus, overruled.

In the remainder of her objections, Plaintiff does not identify any errors in the Report, but she continues to argue the ALJ's analysis was flawed. For example, Plaintiff argues,

> In the absence of the ALJ's failure to acknowledge that [Plaintiff's] conditions could be expected to wax and wane and his failure to acknowledge in his rationale that the medical records specifically noted her symptoms could be expected to worsen when she engages in activity, the ALJ's rejection of [Plaintiff's] allegations and rejection of the medical evidence citing more severe symptoms than the ALJ accepted in the RFC are not substantially supported.

[ECF No. 26 at 7.] Again, Plaintiff seems to be asking the court to reweigh the evidence considered by the ALJ, and that is not this court's province. This objection is overruled.

Plaintiff later reasserts her argument that "the ALJ failed to provide a supportable basis to find her headaches and visual problems, both of which are likely tied to the MS and spinal dysfunction, were not severe impairments." *Id.* at 8. As noted in the Report, Plaintiff did not argue that the ALJ erred in not finding her headaches to be a severe impairment. [ECF No. 22 at 6, n.4.] But also, the Report fully explains how both Plaintiff's vision problems and headaches were adequately discussed in the decision such that he "'buil[t] an accurate and logical bridge from the evidence to his conclusion.'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)

(quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). The court agrees with that reasoning and overrules this objection.

For the reasons outlined above, the court overrules all of Plaintiff's objections. As thoroughly explained in the Report, Plaintiff failed to show a basis for remand on any of the issues she raised.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record in this case, the court adopts the Report and affirms the Commissioner's decision.

IT IS SO ORDERED.

March 1, 2024                                          Sherri A. Lydon
Columbia, South Carolina                        United States District Judge